# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

V.

JAIME ANDRADE, also known as "Sin," and MARIBEL MIRAMONTES

UNDER SEAL

CRIMINAL COMPLAINT

MAGISTRATE JUDGE LEVIN

CASE NUMBER: 04CR0522

FILED
MAY 27  2004
May 27 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
04 CR 0522

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about January 15, 2004, in Cook County, in the Northern District of Illinois, defendants did

> conspire with each other and with others to knowingly and intentionally distribute a controlled substance, namely, in excess of fifty grams of mixtures containing cocaine base, commonly known as "crack" cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

in violation of Title 21 United States Code, Section 846 and Title 18 United States Code, Section 2.

I further state that I am a(n) Special Agent, U.S. Department of Homeland Security, Immigration and Customs Enforcement and that this complaint is based on the following facts:

> See attached affidavit.

Continued on the attached sheet and made a part hereof:  XX Yes  ___ No

_____
Christopher Yoder, Special Agent
Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence,

May 27, 2004                    at    Chicago, Illinois
Date                                  City and State

IAN H. LEVIN, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer             Signature of Judicial Officer

STATE OF ILLINOIS )
                       ) SS
COUNTY OF COOK )

## AFFIDAVIT

I, Christopher Yoder, being duly sworn under oath, depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and prior to that I was a special agent with its predecessor agency, United States Customs Service ("USCS"). I have been a Special Agent for USCS and ICE for approximately one year. Prior to that, I worked as a Special Agent with the United States Department of Housing and Urban Development Office of Inspector General ("HUD-OIG") for approximately 6 years. My work with ICE primarily involves narcotics investigations, as did my work with USCS and HUD-OIG.

2. The information contained in this affidavit is based on my personal knowledge and information I received from other sources, including other law enforcement officers and agents and documents I reviewed. It does not contain all the information I know about this case and is merely a summary.

3. As set forth below, there is probable cause to believe that on January 15, 2004, in Cook County, in the Northern District of Illinois, JAIME ANDRADE, also known as "Sin," and MIRABEL MIRAMONTES conspired with each other and with others to knowingly and intentionally distribute a controlled substance, namely, in excess of fifty grams of mixtures containing cocaine base, commonly known as "crack" cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21 United States Code, Section 846 and Title 18 United States Code, Section 2.

4. On January 15, 2004, a confidential informant ("CI"), spoke by telephone to ANDRADE to

confirm that ANDRADE and the CI were going to meet that day.

5. The CI has two pending criminal cases in the Circuit Court of Cook County, both involving charges of unlawful possession of a stolen motor vehicle. The CI hopes to obtain benefits in those cases in exchange for his cooperation, to include potentially dismissal of the charges. The CI has previously been convicted of aggravated discharge of a firearm. The CI has received reimbursement for expenses incurred as a result of his ongoing cooperation with law enforcement, and agents have assisted the CI in obtaining and paying for housing in part to protect the CI and the CI's family from retaliation for his cooperation with law enforcement. The CI has provided reliable information to law enforcement in the past, including information which has been corroborated by audio recordings and other sources.

6. At approximately 3:00 p.m. on January 15, 2004, the CI, equipped with a hidden recording device, entered a residence around 29th and Emerald streets in Chicago, Illinois where he was to meet ANDRADE. Prior to entering the residence, the CI was searched by police for contraband on his person, and none was discovered.

7. The recording captured by the hidden recording device demonstrates that in addition to the CI, at least two males and at least one female were in the residence during this meeting.

8. Prior to the meeting, law enforcement had provided the CI $1200 of "buy money" to purchase crack cocaine from ANDRADE.

9. At the outset of the meeting, a male identified by the CI as ANDRADE is recorded asking the CI if he has the money, then stating "let me see." ANDRADE is heard asking if the money is real and stating that he would give it back to the CI. ANDRADE is heard on the recording telling the CI that he does not want the people ANDRADE deals with to tell ANDRADE that he gave them

2

fake money. Moments later, after the CI states "let's go," ANDRADE is heard on the recording stating "I've got to call the dude" and then instructing "Mari" to call someone.

10. Also early in the meeting, ANDRADE is recorded asking the CI how many he wants, and the CI responds "two." Approximately a minute later, the CI asked where they had to go to, and ANDRADE responded 51st and Wood.

11. Moments later, the recording device captured a female participating in a phone call. The call begins with the female stating: "Hello J.D.? This is Mari." According to the CI, this call was placed by MARIBEL MIRAMONTES, who uses the shortened name "Mari."

12. During that telephone call, the recording device captured MIRAMONTES asking the individual with whom she was speaking on the telephone if he remembered what they talked about the other day "about the O." MIRAMONTES asked the individual if he could get "two of them right now."

13. Based on my training and experience in narcotics investigations, I know that "O" is a common abbreviation for ounces of a controlled substance. Based on the context of this conversation and the events that follow, described below, I believe that ANDRADE and MIRAMONTES are arranging the purchase of two ounces of crack cocaine from an individual who uses the initials "J.D."

14. Shortly after this telephone conversation, law enforcement surveillance saw the CI exit the residence, along with a male and female, and observed the three of them enter a vehicle driven by the CI. Law enforcement surveillance noted that the appearances of the male and female match known photographs of JAIME ANDRADE and MIRABEL MIRAMONTES. In addition, the voices captured on the hidden recording device worn by the CI while inside the car are consistent with the

3

voices recorded inside the residence identified by the CI as ANDRADE's and MIRAMONTES's.

15. The CI drove to an area near 51st and Wood streets in Chicago. While in the car, MIRAMONTES is heard on the recording calling an individual to arrange to meet that individual. At approximately 4 p.m., while the CI's vehicle is parked, law enforcement surveillance observed a man enter the vehicle. After some discussion, MIRAMONTES is heard saying: "You're the one that said 'I'm ready.'"

16. Shortly after he entered the vehicle, law enforcement surveillance observed the same man exit the vehicle and walk into a nearby residence. Moments later, surveillance observed the same man exit the residence and again enter the vehicle.

17. When the man was in the vehicle the second time, he asks if he is receiving phony money, and ANDRADE and MIRAMONTES tell him that the money has already been checked, with ANDRADE adding: "I ain't trying to dirty my fucking hands for no other motherfucker." The CI is recorded telling the man to "check it." ANDRADE is also recorded telling the man in this conversation that ANDRADE has some other people "lined up" and that usually he gets his own "shit." Based on my training and experience, I believe that ANDRADE is informing the man that ANDRADE knows additional people looking to buy narcotics, and that ANDRADE is usually able to supply them himself but currently is unable to do so.

18. Approximately a minute after entering the CI's car, the man exited the car. According to the CI, while inside the car, the man handed ANDRADE two plastic bags, which ANDRADE then handed to the CI. According to the CI, the CI paid the man $1000, and the CI paid ANDRADE $200 for arranging the deal.

19. After the meeting with that man, while still in the CI's vehicle, MIRAMONTES is heard on

4

the recording stating that she told another individual: "I ain't no fucking crackhead – I fucking deal."

20. While under constant surveillance, after the transaction, the CI dropped off ANDRADE and MIRAMONTES at separate locations and reunited with law enforcement officers. The CI provided officers with the two plastic bags discussed above. The contents of the bags were tested by a forensic scientist with the Illinois State Police Division of Forensic Services. The analysis revealed that the bags contained cocaine base, commonly referred to as crack cocaine, with a net weight of approximately 54.6 grams (approximately two ounces).

21. The following day, January 16, 2004, the CI spoke to ANDRADE in a recorded conversation. The CI told ANDRADE that the "dude" (referring to the CI's purported customer) said that the "work" was "love," meaning that the crack cocaine was of a high quality. ANDRADE stated "uh-huh." The CI told ANDRADE that maybe they could hook up next week, to which ANDRADE said "yeah." The CI told ANDRADE to tell the "dude" (referring to the unidentified supplier) not to go anywhere, and ANDRADE responded "all right."

5

FURTHER AFFIANT SAYETH NOT.

_____
Christopher Yoder, Special Agent
Immigration and Customs Enforcement

Subscribed and sworn to
before me this 27th day of
May, 2004

_____
IAN H. LEVIN
United States Magistrate Judge

6